Filed 4/4/25  Forbush v. Hamilton Cove Homeowners Assn. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MARC FORBUSH et al., | B334724 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 22LBCV00529) |
| v. | |
| HAMILTON COVE HOMEOWNERS ASSOCIATION, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael Vicencia, Judge.  Affirmed.

The Perry Law Firm, Michael R. Perry, Larry M. Roberts and Matthew J. Bertolucci for Plaintiffs and Appellants.

Moskovitz Appellate Team, Myron Moskovitz and Jason R. Marks; Biston-Gubernick and Jeffrey S. Gubernick for Defendant and Respondent.

———————————

Plaintiffs and appellants Marc Forbush and Carol Forbush appeal from a portion of a judgment entered in favor of defendant and respondent Hamilton Cove Homeowners Association (the HOA) in this action arising out of the HOA's denial of proposed modifications to the Forbushes' units. The trial court found the HOA's refusal to consider a request for an interior elevator at the first stage of architectural review was unreasonable, but found the HOA acted reasonably in denying requests to construct an exterior elevator and an interior hallway that would have required granting the Forbushes exclusive use of common areas.

On appeal, the Forbushes assert, among other contentions, that the HOA's denial of the proposed modifications was arbitrary and capricious, failed to adhere to the governing documents, and violated California laws allowing modifications to accommodate disabilities. We conclude the trial court's findings that the HOA acted reasonably are supported by substantial evidence: California law does not require the HOA to allow modification to accommodate the potential disabilities of potential renters, the trial court's finding that certain utility pipes behind the walls of the Forbushes' units are located in common areas was supported by substantial evidence, and the HOA did not act unreasonably by refusing to grant the Forbushes exclusive use of those common areas. Because the HOA did not act unreasonably in denying these modifications at the first stage of the architectural review, they were not required to proceed to a second stage of review as to these proposals. Therefore, we affirm.

2

# FACTS

## I.    Hamilton Cove

Hamilton Cove is a condominium development on Catalina Island with 185 units in multiple buildings.  Building 8 contains 18 units "stair-stepped" on a hillside, with part of each lower unit forming the floor and balcony of the unit above.

The HOA is governed by a five-member board of directors (the board) and regulated by the Restated Declaration of Covenants, Conditions and Restrictions and Reservation of Easements for Hamilton Cove as amended December 1, 2018 (the CC&Rs).

The CC&Rs define a "unit" as "a living area space or spaces ('Residential Element') bounded by and contained within the interior unfinished . . . surfaces of the perimeter walls, floors, ceilings, windows and doors of each Residential Element, as shown and defined in the Condominium Plan.  In interpreting deeds, declarations and plans, the existing physical boundaries of the Unit or a Unit constructed or reconstructed in substantial accordance with the Condominium Plan . . . shall be conclusively presumed to be its boundaries, rather than the description expressed in the deed, Condominium Plan, Original Declaration, or this Restated CC&Rs, . . . regardless of minor variances between boundaries as shown on the Condominium Plan . . . .  In simple language, a 'Unit' is everything inside the walls of a Condominium which is the sole property of a sublessee or fee simple owner.  A sublessee or fee simple owner has an undivided

interest in the walls and Improvements in the Increment where the Unit is located."

The "common areas" of the complex include, "without limitation, for maintenance purposes of the Association, but not necessarily by way of fee title, all gas, water and waste pipes, all sewers, all ducts, chutes, conduits, wires, and other utility installations of the Project Improvements wherever located . . . ."

The board appoints a three-member architectural committee (the committee) to review proposals to modify units. No construction or alteration of an improvement may be commenced until plans and specifications showing the nature, kind, shape, height, width, color, materials and location have been submitted to the committee and received approval in writing. The committee "shall approve proposals or plans and specifications submitted for its approval only if it deems that the construction, alternations, or additions contemplated thereby in the locations indicated will not be detrimental to the appearance of the surrounding area of the Project as a whole, that the appearance of any structure affected thereby will be in harmony with the surrounding structures, that the construction thereof will not detract from the beauty, wholesomeness and attractiveness of the Common Property or the enjoyment thereof by the Members . . . ."

The committee's approval of a proposal in connection with another matter cannot be deemed to be a waiver of the right to withhold approval or consent to similar proposals, plans and specifications, drawings or matter subsequently or additionally submitted for approval.

The CC&Rs limit the scope of the committee's review: "The Architectural Committee shall review and approve or disapprove

all plans submitted to it for any proposed Improvement, alteration or addition, on the basis of aesthetic considerations, consistency with the Restated CC&Rs, and the overall benefit or detriment which would result to the immediate vicinity and the Project generally.  The Architectural Committee shall take into consideration the aesthetic aspects of the architectural designs, placement of buildings, landscaping, color schemes, exterior finishes and materials and similar features.  The Architectural Committee's approval or disapproval shall be based solely on the considerations set forth in this Article IV, and the Architectural Committee shall not be responsible for reviewing, nor shall its approval of any plan or design be deemed approval of, any plan or design from the standpoint of structural safety or conformance with building or other codes."

The CC&Rs also provide that "no exterior addition, change or alteration to any Condominium or Residence shall be commenced without the prior written approval of the Architectural Committee.  Nothing shall be done in any Condominium or in, on or to the Common Areas which will or may tend to impair the structural integrity of any building in the Project or which would structurally alter any such building except as otherwise expressly provided herein."  The committee has interpreted this provision to preclude approval of alterations which would impair the structural integrity or would structurally alter any building in the project unless provided for in the CC&Rs.

The committee's recommendations are subject to independent reconsideration by the board.

In addition to the CC&Rs, the owners are governed by the revised and restated Rules and Regulations & Security Guard

5

Guidelines (the rules). The rules state that "[t]he Committee shall utilize a two-stage approval process. The Owner's preliminary submission shall include sketches and a description of the work. After the Committee has approved the basic plan, more complete drawings with detailed specifications may be required."

## II.    Proposal to Combine the Forbush Units

The Forbushes own two one-bedroom condominiums in the complex, units 81 and 82, which they market for short-term rentals. They are the middle two units of the four units on the lowest floor of Building 8. Each unit is two-stories.

The Forbushes requested permission to use dead space on the lower floor of unit 81 for storage, which was granted. The HOA had also granted similar requests by other owners to use dead space for storage. The HOA had twice transferred management and maintenance of small inaccessible balconies that were not of general use to the membership at large, but the committee had never permitted two units to be joined through installation of an interior door.

The Forbushes submitted a series of proposals to combine their units into a single unit and install elevators. In the Forbushes' fourth proposal, they sought to: (1) install an exterior elevator providing access to unit 82 that would be attached to the wall of Building 8; (2) install an internal elevator between the lower and upper levels of unit 82; (3) install a desalinization unit; (4) divide the living room of unit 81 into two bedrooms and remove walls between the units to join the kitchen and dining rooms of each; (5) convert the laundry room of unit 81 to a three-

quarters bathroom; and (6) convert an area behind the upper levels containing pipes for the complex into a hallway connecting the units. With respect to the new hallway, the proposal added, "This resubmission adds a hallway between the Units at the location of the trespassing pipes. If the pipes remain, this hallway will be partially obstructed. However, the hallway will be unobstructed when the pipes are removed and [the Forbushes fully recover] their recorded square footage at that location."

Design renderings attached to the proposal showed the visual impact on the exterior design of the building from adding an exterior elevator, eliminating the uniform character of the stepped balconies by pushing one wall out flush and boxlike in a section at the bottom of the building. In addition, a trial exhibit shows a three-dimension rendering of the proposed hallway. Unless removed, there would be several thick, large pipes crossing through the space from the floor's mid-point to the mid-point of the exterior wall. A blueprint showed the proposed interior modifications.

The committee conducted the first stage review and denied the requested alterations. In general, the committee concluded the proposal sought exclusive use of substantial portions of the common area that the committee and the board did not have authority to grant and a vote of the membership would be required.

The committee denied the request for an external elevator. The proposed external elevator would require modification of an exterior wall and the exterior appearance of the Forbushes' units. This modification would require granting common area for the Forbushes' exclusive use. The committee stated that the project was uniformly designed. Exterior alterations could not be

detrimental to the appearance of the surrounding area of the project as a whole, and the appearance of any structure affected must be in harmony with the surrounding structures. The proposed external elevator did not meet this requirement. The proposed alteration of the exterior was in conflict with the original design.

The committee did not want to set a precedent that would be a detriment to the project overall. Changes to the exterior appearance of any building in the project do not benefit the project overall. No changes to the exterior appearance of the complex had been made in more than 30 years, and the committee did not want to set a precedent that the outside appearance of the complex could be changed.

The committee considered whether the requirements of Civil Code section 4760 applied, but concluded that they did not, because the proposal did not state that a person who was blind, visually handicapped, deaf, or physically disabled owned or resided in either unit. The committee concluded proposed alterations must benefit a person residing in the unit to invoke the statute, because Civil Code section 4760, subdivision (a)(2)(C), required the external modifications to be "removed by the member when the separate interest is no longer occupied by persons requiring those modifications who are blind, visually handicapped, deaf, or physically disabled."

The committee expressed concern that the proposed alterations would impair the structural integrity of the building. The HOA was extremely reluctant to unnecessarily disturb any structural element of the building, particularly because the developer had failed to provide complete plans of the building identifying the location of all pipes, conduits, and structural

8

elements.  The committee believed it could not approve alterations which might impair the structural integrity of the project.

The committee concluded the proposed alterations were not within the authority of the committee or the board to approve.

The committee rejected installation of an interior elevator for the same reasons.  The committee expressed particular concern about structural integrity issues with respect to the proposed interior elevator.

The committee denied approval for the desalinization unit because the supply of salt water used to flush toilets in the complex was limited and concentrated brine from desalinization could damage the sewage system.

The committee rejected the proposed conversions of the living room and laundry room based on the prohibition on granting exclusive use of common areas without a membership vote and the same concerns described above in connection with the external elevator.

The proposed modification to the area behind the back walls to construct a hallway was rejected based on the prohibition on granting exclusive use of common areas, as well as the reasons provided in connection with the other requests, and in particular, "The pipes are not located within an area that is part of the Unit. They are located in a chute."  The committee noted that under the CC&Rs, all chutes were common areas.

## III.    Reconsideration by the Board

The Forbushes appealed the committee's decision to the board.  The board rejected the Forbushes' proposal.  The board

noted that Building 8 was a single building where any structural alteration of a unit may impair the structure of units above it. The board concluded the ducts, chutes, conduits, wires, and other utility installations that the Forbushes sought to include in their units were common areas under the CC&Rs, and were not trespassing on the Forbushes' units, as they were expressly included in the definition of common areas in the CC&Rs. The proposal required granting the Forbushes exclusive use of common areas, which the board did not have authority to do under Civil Code section 4600, and none of the exceptions applied. Some of the proposed alterations would impair the structural integrity of Building 8, and none of the exceptions contained in Civil Code section 4760 applied.

The board rejected the request for an exterior elevator because it would require granting exclusive use of the common area, which the board did not have and which did not fall within any exception to Civil Code section 4600. In addition, the board noted that Civil Code section 4760, subdivision (a)(2), applied only to the member's separate interest, not to the common area. An exterior elevator would alter the appearance of Building 8 inconsistent with the exterior appearance of the other buildings at the project. The proposed elevator did not meet the requirement that any exterior alteration not be detrimental to the appearance of the surrounding area of the project as a whole and the appearance of any affected structure by in harmony with the surrounding structures.

The interior elevator was not approved because it would eliminate the stairway between the floors of the unit and involved structural issues. The desalination unit was not approved for the same reasons as those given by the committee.

Conversion of the living room was not approved because it involved structural alterations and exclusive use of common area, including chutes, conduits, and other utility installations, which the board did not have authority to approve. The board found conversion of the laundry room involved altering plumbing that was part of the common area. The board denied approval for the hallway for the same reasons as the committee.

## PROCEDURAL BACKGROUND

On September 28, 2022, the Forbushes filed a complaint against the HOA alleging breach of the CC&Rs, violation of Civil Code section 4765, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, negligence, and declaratory and injunctive relief. They alleged in pertinent part that the HOA acted arbitrarily and capriciously by denying the proposed modifications, and breached the CC&Rs by maintaining "trespassing" common area pipes. The HOA breached their duty of good faith and fair dealing and their fiduciary duty to the Forbushes by failing to approve the proposed modifications in accordance with the requirements of the CC&Rs, and as a result, the Forbushes will incur at least $50,000 in damages from the diminished market value of their property and expenses incurred. The Forbushes sought a declaration that the HOA breached its obligations to the Forbushes by failing to approve the current architectural plans and the plans should be approved. They also sought an injunction requiring the HOA to approve their current architectural plans.

A bench trial was held in November 2023. The Forbushes explained that the remedy they were seeking was reversal of the

HOA's decision, allowing them to proceed to stage two of the architectural review process in which they would submit more detailed plans. With respect to their causes of action for breach of fiduciary duty, breach of the covenant of good faith and fair dealing, and violation of Civil Code section 4765, the Forbushes were clear that the remedy they were seeking was a reversal of the HOA's decision, thereby allowing them to proceed to stage 2 of the architectural review process. They expressly stated that they were not seeking monetary damages.

On November 13, 2023, the trial court gave an oral statement of decision, finding in favor of the HOA on all causes of action, with the exception that the court concluded the HOA violated its review process in rejecting the proposal for an interior elevator.

With respect to the exterior elevator, the trial court found the HOA acted reasonably in exercising its ability to evaluate aesthetics by rejecting the exclusive use of a common area and declining to set a precedent allowing exterior changes that would detract from the appearance of buildings in the complex. Therefore, the committee did not act arbitrarily or capriciously in denying the request for the exterior elevator.

As to the interior elevator, the court determined the HOA's ruling denying it at the first stage of review before receiving detailed plans and specifications was improper. The interior elevator did not affect the aesthetics of the building. It was arbitrary and capricious for the HOA to automatically reject plans and specifications because there might be structural problems. If it turned out that an interior elevator was not structurally feasible, the committee could ultimately reject the interior elevator. It was arbitrary to reject the entire concept and

conclude no one could have an interior elevator. The request to install an interior elevator was entitled to preliminary approval by the committee, allowing the Forbushes to proceed to the second step of the committee's review process.

The request for a desalination unit was reasonably denied because of the evidence that it would have negative effects on the saltwater circulation system of the development.

With respect to the request to construct a hallway behind the walls of the upper level, the court found the pipes and the space around the pipes were part of the common area under the definition provided in the CC&Rs. Based on these findings, the HOA acted reasonably, not arbitrarily or capriciously, by denying the request to construct a hallway behind the upper units.

The court found the request to convert the living room and laundry room was dependent on being able to construct the hallway. Therefore, the court concluded the committee acted reasonably in denying the hallway and the two conversion requests.

In addition, the court found the board voted not to recuse a particular member, and in doing so, agreed to waive any conflict, which it had the power to do. The court found in favor of the HOA with respect to the causes of action for negligence, breach of fiduciary duty, breach of the covenant of good faith and fair dealing, and violation of Civil Code section 4765.

The trial court ordered declaratory and injunctive relief in accordance with the substantive rulings. The court entered a written judgment in accordance with its statement of decision on November 27, 2023. The Forbushes filed a timely notice of appeal.

## DISCUSSION

## I.    Standard of Review

If the governing documents of an association require obtaining approval before a member can make a physical change to the member's separate interest or to the common area, "[a] decision on a proposed change shall be made in good faith and may not be unreasonable, arbitrary, or capricious." (Civ. Code, § 4765, subd. (a)(2).)  The decision on a proposed change may not violate any law, including the Fair Employment and Housing Act (Gov. Code § 12900 et seq.), or a building code.  (Civ. Code, § 4765, subd. (a)(3).)

" 'In reviewing a judgment based upon a statement of decision following a bench trial, we review questions of law de novo.  [Citation.]  We apply a substantial evidence standard of review to the trial court's findings of fact.  [Citation.]  Under this deferential standard of review, findings of fact are liberally construed to support the judgment and we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings.' [Citation.]" (*Lopez v. La Casa De Las Madres* (2023) 89 Cal.App.5th 365, 378.)

The trial court's decision whether to grant or deny declaratory relief will not be disturbed on appeal unless it is clearly shown its discretion was abused.  (*Dolan-King v. Rancho Santa Fe Assn.* (2000) 81 Cal.App.4th 965, 974.)  If the essential facts are undisputed, however, the propriety of the trial court's decision granting or denying declaratory relief presents a question of law.  (*Ibid*.)  In addition, if review of a declaratory

14

judgment requires interpretation of the CC&Rs, that is also an issue we determine de novo. (*Ibid*.)

## II. Exterior Elevator

We conclude substantial evidence supports the trial court's finding that the HOA acted reasonably, not arbitrarily or capriciously, when it denied the Forbushes' request to construct an exterior elevator.

### A. Aesthetic Concerns

The HOA rejected the proposed exterior elevator because it was not in accordance with the original design of the building and would alter its appearance. In addition, the committee did not want to set a precedent that the exterior appearance of the building could be changed. The trial court's finding that the HOA's concerns were legitimate is supported by the evidence. The committee considered the aesthetic impact of the proposed exterior elevator. The renderings of the proposed elevator show that it would alter the appearance of the exterior of the building by eliminating the uniformity of the design in a way that a reasonable person could perceive to be detrimental to or at least an alteration of the aesthetics of the building. The HOA had never previously permitted installation of an elevator for Building 8 or an extensive modification of the exterior similar to the proposed modification. If the Forbushes' exterior elevator were approved, owners requesting similar modifications would need to be treated consistently, furthering altering the appearance of the building and failing to protect the interests of

15

owners who purchased their units in the building based on the existing design and the representations in the CC&Rs. The trial court's finding that the HOA acted reasonably, not arbitrarily and capriciously, by denying the proposed exterior elevator based on aesthetic concerns is supported by substantial evidence; we do not reweigh the evidence on appeal.

## B. Disability Laws

The Forbushes contend the HOA was required to grant them exclusive use of the common area for the proposed exterior elevator based on the provisions of Civil Code section 4760 and the Fair Employment and Housing Act (Gov. Code s 12900 et seq.; FEHA). We disagree.

### 1. Civil Code section 4760

Civil Code section 4760 provides in pertinent part: "(a) Subject to the governing documents and applicable law, a member may do the following: [¶] (1) Make any improvement or alteration within the boundaries of the member's separate interest that does not impair the structural integrity or mechanical systems or lessen the support of any portions of the common interest development. [¶] (2) Modify the member's separate interest, at the member's expense, to facilitate access for persons who are blind, visually handicapped, deaf, or physically disabled, or to alter conditions which could be hazardous to these persons. These modifications may also include modifications of the route from the public way to the door of the separate interest for the purposes of this paragraph if the separate interest is on

16

the ground floor or already accessible by an existing ramp or elevator. The right granted by this paragraph is subject to the following conditions: [¶] . . . [¶] . . . [¶] (C) Modifications external to the dwelling shall not prevent reasonable passage by other residents, and shall be removed by the member when the separate interest is no longer occupied by persons requiring those modifications who are blind, visually handicapped, deaf, or physically disabled."

Civil Code section 4760, subdivision (a)(2), allows a member to modify the route from the public way to the door of the member's unit to facilitate access for physically disabled persons, but subdivision (a)(2)(C) limits the provision to modifications required by an occupant of the unit, as the modifications must be removed when the unit is no longer occupied by the person requiring the modifications. In this case, there is no occupant of the unit that requires an external elevator. The statute does not apply.

## 2. Government Code Section 12927

The Forbushes contend the HOA's denial of the proposal violates Government Code section 12927. We disagree.

The definition of "discrimination" as used in Government Code section 12927 in connection with housing accommodations includes "the refusal to permit, at the expense of the disabled person, reasonable modifications of existing premises occupied or to be occupied by the disabled person, if the modifications may be necessary to afford the disabled person full enjoyment of the premises, except that, in the case of a rental, the landlord may, where it is reasonable to do so condition permission for a

17

modification on the renter's agreeing to restore the interior of the premises to the condition that existed before the modification (other than for reasonable wear and tear), and includes refusal to make reasonable accommodations in rules, policies, practices, or services when these accommodations may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling." (Gov. Code, § 12927, subd. (c)(1).)

Under this statutory scheme, "owner" includes "any person having any legal or equitable right of ownership or possession or the right to rent or lease housing accommodations." (Gov. Code, § 12927, subd. (e).)

Under the plain language, Government Code section 12927 applies to a proposed modification of the existing premises to be paid for by a disabled person who is occupying or intending to occupy the premises. In this case, the proposed exterior elevator would not be paid for by a disabled person, and there is no disabled person occupying or intending to occupy the unit. There may never be a disabled person who intends to occupy the unit. The Forbushes cannot use a hypothetical disabled occupant to force the HOA to approve installation of an exterior elevator in the common area under statutes which they would not otherwise qualify to invoke. Government Code section 12927 does not apply to the facts in this case.

### III.  Proposed Hallway in Area Containing Utility Pipes

We conclude substantial evidence supports the trial court's finding that the HOA acted reasonably, not arbitrarily or capriciously, when it denied the Forbushes' request to construct a hallway in the area behind the upper levels of their units.

18

### A. Common Area

The Forbushes admit the pipes at issue are considered common area pipes, but contend the trial court's finding that the pipes were located in a "chute" that constituted a common area is not supported by substantial evidence or law. We conclude the trial court's finding is supported by the evidence.

The space in which the pipes are located is behind the interior walls of the Forbush units, inaccessible from the Forbushes' units. The Forbushes discovered the space by breaking through the walls. The CC&Rs expressly state that a fee simple owner's interest is the area bounded by and contained within the interior, which controls over the description expressed in the deed. Fee simple owners have an undivided interest in the walls. The trial court found the common area utility pipes were constructed in common area space behind the interior walls, outside of the Forbushes' fee simple ownership interest contained within the interior walls. This interpretation of the documents and the evidence is more reasonable than the Forbushes' argument that the area in which the common area pipes were placed, which is inaccessible from their units, is nevertheless part of their fee simple interest. The HOA and the owners have consistently treated this type of "dead space" as common area requiring approval to use as storage space. Because the space around the pipes is common area, the pipes are not trespassing or a nuisance.

## B. Exclusive Use of Common Area

The Forbushes contend the HOA can grant exclusive use of a common area to an owner without a vote of the membership, but they have not shown the HOA acted unreasonably by denying their proposal.

Civil Code section 4600, subdivision (a), provides: "Unless the governing documents specify a different percentage, the affirmative vote of members owning at least 67 percent of the separate interests in the common interest development shall be required before the board may grant exclusive use of any portion of the common area to a member."

Civil Code section 4600, subdivision (b) provides certain exceptions, however, including allowing a grant of exclusive use for the following reasons: "To eliminate or correct encroachments due to errors in construction of any improvements." (Civ. Code, § 4600, subd. (b)(3)(B)); "To transfer the burden of management and maintenance of any common area that is generally inaccessible and not of general use to the membership at large of the association. (Civ. Code, § 4600, subd. (b)(3)(E)); "To accommodate a disability. (Civ. Code, § 4600, subd. (b)(3)(F)); and "To comply with governing law" (Civ. Code, § 4600, subd. (b)(3)(K)).

The trial court's finding that the HOA acted reasonably and none of the exceptions apply is supported by substantial evidence. There was no evidence of an engineering or construction error that needed to be corrected. Although the HOA previously permitted the Forbushes to use common area space behind the wall for storage, the proposal to use the space for a hallway is

entirely different.  A use for storage presents minimal interference with the concurrent use of the space for pipes or access.  This particular space is of general use to the membership, as it is being used for common area utility pipes that service other parts of the building.  The Forbushes have not explained how the hallway is necessary to accommodate a disability or comply with governing law.  The trial court's finding that it was reasonable for the HOA to conclude that none of the exceptions to Civil Code section 4600 applied is supported by the evidence.

The HOA acted consistently with the CC&Rs, as no other member had been allowed to convert this type of inaccessible space with pipes to a hallway.  When the HOA reasonably denied this request at stage 1 of the review process, it was not required to proceed to stage 2 of the review process, so the HOA followed its policies and procedures with respect to the proposed hallway.

The trial court found that the Forbushes' proposals to convert the living room and laundry room relied on the HOA approving the proposed hallway.  The Forbushes' expert testified that the hallway was required to access the new bedrooms proposed, and that without the hallway, the proposal for the bedrooms would necessarily fail.  Further, the Forbushes' attorney conceded during trial that if other proposals for joining the two units were denied, it was reasonable to deny conversion of the laundry room because both units would still need a laundry room.  It would not have been reasonable for the HOA to approve the proposed conversion of the living room and the laundry room without seeing plans for the proposed configuration without use of the common area space for a hallway.  Therefore, the trial court's finding that the HOA acted reasonably by denying the

current proposals for conversion of the living room and laundry room as configured, in conjunction with refusing to grant exclusive use of the common area for a hallway, is supported by substantial evidence.

## IV. Failure to Rule

The Forbushes contend that the trial court failed to rule on their causes of action for breach of the covenant of good faith and fair dealing and breach of fiduciary duty. However, the trial court in fact ruled on the causes of action, finding in favor of the HOA. Moreover, the trial court provided declaratory and injunctive relief with respect to the proposed interior elevator, which was the only proposed modification that the trial court determined should have proceeded to a stage 2 architectural review. At trial, the Forbushes conceded they were not seeking damages, and they did not ask for any different relief in connection with the causes of action for breach of the covenant of good faith and fair dealing or breach of fiduciary duty than the trial court provided. No error has been shown.

## DISPOSITION

The judgment is affirmed.  Respondent Hamilton Cove Homeowners Association is awarded its costs on appeal.
NOT TO BE PUBLISHED.


MOOR, J.

WE CONCUR:


HOFFSTADT, P. J.


KIM (D.), J.